493 So.2d 835 (1986)
STATE of Louisiana, Appellee,
v.
Richard Mark ADAMS, Appellant.
No. 17,954-KA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Writ Denied November 7, 1986.
*836 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee.
Before MARVIN, FRED W. JONES, Jr. and SEXTON, JJ.
PER CURIAM.
The defendant, Richard Mark Adams, age 23, was charged by bill of indictment with two counts of aggravated rape and two counts of attempted aggravated rape on four separate victims over a period of seven months. Pursuant to a plea bargain, the defendant pled guilty to two counts of forcible rape, and to two counts of attempted aggravated rape. The defendant was subsequently sentenced to forty years at hard labor, two years without benefit of probation, parole or suspension of sentence on both counts of forcible rape. He was sentenced to fifty years imprisonment at hard labor on both counts of attempted aggravated rape. These terms, the maximum authorized in each case, were imposed consecutively. The defendant now appeals, arguing through fourteen assignments of error that the sentences imposed upon him were excessive and the reasons therefore were inadequately articulated.
The events leading to the charges filed against the defendant are as follows. At approximately 5:00 a.m. on December 9, 1984, victim number one was awakened by an assailant carrying a knife who bound her hands and feet and placed duct tape over her eyes and mouth, thereby preventing her from identifying her attacker. The intruder raped this victim and also took some of her undergarments and her purse.
At approximately 1:30 a.m. on December 27, 1984, a similar attack was perpetrated against victim number two. In this instance the attacker wore a Halloween mask which prevented the victim from seeing his face. Victim number two was handcuffed and blindfolded but the intended rape was not fully perpetrated. However, the intruder shaved the victim's pubic area during the attack and took several photographs of victim number two in various nude poses.
The next attack occurred at approximately 10:00 p.m. on February 7, 1985. Victim number three was similarly attacked, bound, shaved, photographed and raped at knifepoint. Again, the intruder wore a Halloween mask to prevent his victim from identifying him.
At approximately 3:30 a.m. on July 2, 1985, victim number four was also attacked in a similar fashion by a man wearing a Halloween mask and carrying a knife. Victim number four fought off the attack for several minutes. Her resistance caused a great deal of noise which alerted a neighbor. The neighbor armed himself with a shotgun and went to the patio of victim number four. The intruder saw the neighbor approaching and fled the premises as the neighbor fired several shots into the air.
The police were summoned and investigating officers located a nearby automobile *837 which was not recognized by any of the local residents. Inside the automobile, in plain view, was a blue ladies wallet. The wallet was identified by victim number four as belonging to her. Subsequent investigation revealed that the car was registered to a man in Greenville, Mississippi who had given the vehicle to his daughter and her husband, Richard Adams, defendant herein.
After his arrest, the defendant gave several unrecorded oral statements to police. He admitted each of these attacks as well as numerous burglaries in the Ruston area and in other nearby parishes. He also admitted to the rape and burglary of a 68 year old woman in Mississippi. He further stated that he had regularly gone about the Ruston area engaging in voyeuristic activity and that on many occasions he entered residences to steal items of underclothing and personal belongings. Many of these items were recovered from his residence including the photographs of victims number two and three and the rape victim in Mississippi.
On appeal the defendant argues fourteen assignments of error which he presents in seven arguments. They all involve either the alleged excessiveness of the sentences or the asserted trial court failure to adequately articulate the sentences.
Assignment No. 2 specifically complains that the trial court failed to comply with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1. In addition, Assignment No. 12 complains that the trial court failed to consider the defendant's status as a first offender, and No. 13 complains that the trial court failed to consider the youth of the defendant.
Contrary to these assignments, the record reflects that the trial court comprehensively considered the aggravating and mitigating circumstances listed in LSA-C. Cr.P. Art. 894.1 to include the age and offender status of the defendant. The sentencing transcript is lengthy and detailed. In sentencing the defendant, the trial court took into account the youth of this defendant and noted as well the possibility that the defendant himself might have been the victim of a sexual offense at an earlier age. The trial court also noted that this was the defendant's first felony conviction. Although the defendant did not have a prior criminal record, the trial court concluded that a suspended sentence was not justified under the circumstances presented.
The trial court also determined that defendant's imprisonment would not entail any hardship upon his dependents. The trial court noted that defendant's former wife and the couple's only child are apparently starting a new life free and apart from the defendant.
The trial court further averted to the serious nature of the crimes committed by the defendant and stated that the series of rapes committed by the defendant permanently damaged the lives of the victims. The trial court also noted that defendant's criminal conduct spread a wave of fear throughout the Ruston area, disrupting the lives of many citizens. The trial court also noted that the Sanity Commission's report, as well as the facts of the case, indicated that defendant clearly contemplated that his criminal conduct would cause serious harm to his victims. The trial court determined that there was an absence of any factors which would tend to excuse or justify defendant's conduct.
The trial court found that the manner in which these crimes were committed was also an important factor to consider. The defendant engaged in a consistent pattern of burglarizing his victim's homes during their absence and awaiting their return for the specific purpose of raping them. The trial court took into account the defendant's lack of remorse for his actions and the harm he inflicted upon his victim. The trial court also considered defendant's admission that he had committed various other offenses in connection with the rapes, and further, that defendant was wanted in Mississippi in connection with a rape and burglary which occurred in Jackson, Mississippi.
*838 Based on these considerations, the trial court determined that there was an undue and significant risk that if given a suspended sentence, the defendant would commit other offenses. The trial court concluded that a period of correctional treatment was necessary and that any lesser sentence would deprecate the seriousness of defendant's crimes. Thus the record shows that sentences imposed were thoroughly considered and exhaustively articulated. Assignment Nos. 2, 12 and 13 lack merit.
The defendant combines a number of assignments into two single arguments. In the first of these he combines Assignment Nos. 3, 4, 6, 9 and 11. Assignment No. 3 complains that the trial court should not have interviewed the victims; No. 4 complains that the court should not have considered the fear in the community generated by the defendant's offenses; No. 6 complains that the trial court improperly considered the manner in which the offenses were committed, i.e., the photographing of the victims nude; No. 9 complains that the court considered evidence received in the defendant's divorce proceedings; and No. 11 complains that the trial court improperly considered the defendant's parole eligibility in determining the sentence to be imposed. We find no merit in any of these assignments.
Just as counsel for the defendant, we are unable to find jurisprudence on the issue of the interview of the victims by the trial judge. However, since a trial judge is mandated to consider factors which mitigate in favor of the defense, it is obviously just as important for the trial court to consider factors which do not. Specifically Part A of LSA-C.Cr.P. Art. 894.1 lists three separate factors for the court's consideration in determining whether imprisonment should be imposed. Thus, the receipt of information from victims of offenses should be just as important as the receipt of information from the defense in determining an appropriate sentence.
Furthermore, defendant has shown no specific prejudice resulting from these interviews. The trial court also reviewed statements in the record taken from the victims by the law enforcement agencies in the course of their investigations and by the probation officer rendering the pre-sentence investigation report. These statements are articulate and balanced. Interestingly, while each victim spoke of the fear and disruption which the attacks had caused in their lives, they also seemed aware that any individual who would perpetrate such an offense must have serious personality defects. Thus it would seem that any personal statements to the judge would also be balanced in nature.
Assignment No. 4 concerning the fear engendered in the community by the offenses deals directly with whether a lesser sentence will deprecate the seriousness of the offense. LSA-C.Cr.P. Art. 894.1 A(3). The taking of photographs of the victims in the manner done here directly pertains to the amount of harm caused by the offense. LSA-C.Cr.P. Art. 894.1 B(1).
The evidence from the civil proceedings of the defendant's divorce are letters which he wrote to his former wife. These letters indicate the defendant's feelings and attitude during the commission of the offenses and thus relate to whether the circumstances of the offense and the attitude of the defendant are such that he is likely to commit another offense. LSA-C. Cr.P. Art. 894.1 B(8) and (9).
Finally, in the group of assignments combined in this single argument, the defendant complains that the trial judge erred in considering his parole eligibility in determining the sentence to be imposed. However, parole eligibility has specifically been held to be an appropriate consideration in determining the length of a sentence to be imposed. State v. Green, 418 So.2d 609 (La.1982).
Defendant's Assignment Nos. 5, 7, 8 and 9 are also treated in a single argument and complain that the trial court erred in considering other charges pending against the defendant, as well as offenses the state agreed not to charge and potential charges *839 which might subsequently arise in Mississippi. However, the only specific argument presented here is the contention that the trial court erred when it considered the possibility of additional rape related charges in Mississippi.
As we have previously noted, shortly after his arrest the defendant admitted to having burglarized and raped an elderly Mississippi woman. Moreover, evidence pertaining to burglaries and other offenses was found in the defendant's residence. He specifically admitted several offenses relating to this evidence and in general conceded that any unresolved peeping Tom incidences which had recently occurred in the area had probably resulted from his conduct.
The record clearly demonstrates that defense counsel was aware of these circumstances and knew that they were to be considered by the trial judge in imposing sentence. At no time did defense counsel or the defendant contend that they were not true. Offenses conceded by a defendant are an appropriate sentencing consideration. State v. Goodson, 444 So.2d 1337 (La.App. 2d Cir.1984), writ denied 449 So.2d 1027 (La.1984). These assignments dealing with the consideration of "other offenses" are without merit.
Assignment No. 1 specifically complains that the sentence is unconstitutionally excessive. It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C. Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra.
The defendant's offenses were perpetrated in a cool and calculating manner. He located and then stalked his prospective victims. He surprised them in their homes, threatened their lives and committed heinous acts upon them. We perceive a progressively increasing level of violence involved in each offense. We thus determine that the sentences imposed for the offenses for which the defendant was convicted are not constitutionally excessive.
Finally, in Assignment No. 14, the defendant complains that the trial judge erred in imposing consecutive sentences. The defendant contends that the crimes in this cause arose out of a single course of conduct such that concurrent sentences are mandated by LSA-C.Cr.P. Art. 883.[*]
*840 We do not consider that the rape or attempted rape of four separate victims on separate dates over a seven month period, although in a fashion such that the offenses are arguably "signature crimes," are offenses that are "based on the same act or transaction, or [that] constitut[e] parts of a common scheme or plan." To the contrary, these offenses committed in a similar fashion over an extended period of time are crimes of a "serial" nature which are separate specific events constituting a serious threat to the public safety. Indeed, consecutive sentences are appropriate even for offenses which are part of a common scheme or plan where the defendant imposes an unusual risk to the safety of the general public. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
Importantly, the defendant received substantial benefit from his plea bargain, an appropriate sentencing consideration. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Richardson, 446 So.2d 820 (La. App. 2d Cir.1984). If he had been convicted of either of the aggravated rapes originally charged, a sentence of life imprisonment without benefit of parole, probation or suspension of sentence would have been mandated. The plea bargain theoretically allows the defendant an opportunity for parole. This assignment lacks merit.
Thus, under the circumstances here presented, we find no abuse of discretion in the sentence imposed in these causes by the trial court. The trial court thoroughly considered all factors associated with this defendant appropriate under LSA-C.Cr.P. Art. 894.1. The trial court's compliance with the guidelines of Art. 894.1 was excellent. The individual sentences imposed are clearly well supported by the record. The record further supports the consecutive imposition of the sentences.
The defendant's sentences are affirmed.
AFFIRMED.
NOTES
[*] LSA-C.Cr.P. Art. 883 states:

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.